Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 The defendants in error filed their petition before the board of commissioners for ascertaining and settling private land claims in California, claiming “ a tract of land called El Cahon, containing eleven sitios de ganado mayor, situated in the county of San Diego, by virtue of a grant in fee made to their mother, Doña Maria Antonio Estudillo de Pedrorena, by Pio Pico, Governor of California, hearing date 23d of September, 1845, and approved by the territorial deputation on the 3d of October, 1845.”
 

 The only question arising in this case, which has not been disposed of in former decisions of this court, is the objection “that the grant is void for uncertainly,” because it defines neither boundaries nor quantity. The authenticity of the grant and confirmation are proved, and do not appear to have been disputed before the commissioners. It is in evidence, also, that Doña Maria and her husband went into possession of the place called “El Cahon” in the year 1845, and have made it “ the best-cultivated rancho in the country about San Diego.” It had formerly belonged to the mission of San Diego. The mission was in debt to the husband of Doña Maria, and agreed to transfer their right of occupancy on this rancho to her, in satisfaction of her husband’s debt.
 

 Judicial possession was not delivered till September, 1846, after the establishment of the American authority, which was in July of that year. And whether void or valid, the espediente of possession made by the officer, Santiago E. Arguello, (who
 
 *364
 
 could not get the assistance of a surveyor,) seems to throw litr tie light on the subject of precise boundary.
 

 But, under the circumstances, the want of such juridical delivery of possession will not affect the title of the petitioners, Unless the grant be absolutely void for uncertainty. Ti.e description' of. the land granted is to he found in the following language in the patent or espediente: “A tract of land known by the name of El Cahon, near the mission of San Diego.” And'again: “The land of which grant is made is that which the map (diseño) attached to the respective espediente expresses,” &c.- “The judge who may.give the possession shall inform the Government ■ of the number of sitios de ganado mayor it contains.”
 

 In construing grants of land in California, made under the Spanish or Mexican authorities, we must take into view the state of the country and the policy of the Government. The population of California before its transfer to the United States was very sparse, consisting chiefly of a few military posts and some inconsiderable villages. The millions of acres of land around them, with the exception of a mission or a rancho on some favored spot, were uninhabited and uncultivated. It was the interest and the policy of the King of Spain, and afterwards of the Mexican Government, to make liberal grants of these lands to those who would engage to colonize or settle upon them. Where land is plenty and labor scarce, pasturage and raising of cattle promised the greatest reward with the least labor. Hence, persons who established ranchos required and readily received grants of large tracts of country as a range for pasturage for their numerous herds.' Under such circumstances, land was not estimated by. acres or arpens. A square league, or “sitio de ganado mayor,” appears to have been the only unit in estimating the superficies of land.. Eleven of these leagues was the usual extent for a rancho grant. If more or less was intended in the grant, it .was carefully stated. Surveying instruments or surveyors were seldom to be obtained in distant locations. The applicant for land usually accompanied his petition with a diseño, or map, showing the natural boundaries or monuments of the tract desired. These were usually rivers, creeks, rivulets, hills, and mountian ranges. The distances between these monuments were often estimated at
 
 about
 
 so many leagues, and fractions of this unit little regarded. To those who deal out land by the acre, such monuments as hills, mountains, &c., though fixed, would appear rather as vague and uncertain boundary lines. But where land had no value, and the unit of measurement was a league, such monuments were considered to-be sufficiently certain.1
 
 *365
 
 Since this country has become a part of the United States, these extensive rancho grants, which then had little value, have now become very large and very valuable estates. They have been denounced as “ enormous monopolies, princedoms,” &c., and this court have been urged to deny to the grantees what it is assumed the former Governments have too liberally and lavishly granted. This rhetoric might have a just influence, when urged to those who. have a right to give or refuse. But the United States have hound themselves by a treaty to acknowledge and protect all bona fide titles granted by the previous Government; and this, court have.no discretion to enlarge or curtail such grants, to suit our own sense of property, or defeat just claims, however extensive, by stringent technical rules of construction, to which they were not originally subjected.
 

 The patent to the claimant’s mother confers a title in fee to an estate “known by the name of El Cahon,” or “The Chest.” It describes it as lying “near the mission of San Diego.” It therefore assumes, that there is an estate or rancho having such a name, and haying some known boundaries.
 

 It is prima facie evidence of such a fact. Those who allege that it is void for uncertainty, must prove either that there are two estates called “El Cahon,” near the mission of San Diego, to which the description in the patent would equally apply; in such case it would be void for ambiguity; or they must prove that there is no estate or property known by that name about San Diego. But there is not a particle of such evidence to he found on the record, nor was such a defence set up before the commissioners. For anything that appears, the “El Cahon” was as well known as San Diego itself. But the description of the patent does not end here; it is further described as “that which the diseño attached to the espediente-expresses.” This map or survey is thus made a part of the patent for the purpose of description. It exhibits a circular valley surrounded by hills or mountains, except at a narrow outlet on the eastern boundary, where a stream of water passes out. The course of the stream through the valley is traced, as also are the roads. The position of corrals, ranchos, cottages, &c., are carefully noted; on the east, a hill or mountain bounds the valley called “El Cahon;” on the west, “Cerro del Porsuele” and “Cerro de la Mesa; ” the northern boundary, as a continuous circular hill or mountain without a name; the southern are broken hills, called “Lomas Altas.” The cardinal points of the compass are given, and a scale of measurement, a single glance at which would show that the valley traced according to that scale would contain about ten leagues, or possibly eleven, the usual allowance for such estates. There is no evidence what
 
 *366
 
 ever, tending to show that, with the assistance of this map, a surveyor would find any difficulty in locating it according to its calls.
 

 In the cases of Frémont and of Larkin, the grants were much more vague than the present, and the same remark which was made in the latter case will equally apply to this. “Ho question appears to have been made as to the practicability of locating the grant in the tribunals bélow, nor do we see any ground upon which such á question could have been properly raised in.the case.”
 

 The judgment is therefore affirmed.
 

 Mr. Justice DARTEL dissented.