## JONATHAN D. STEVENSON *v.* JAMES BENNETT *et als.*

IMPERFECT MEXICAN GRANTS OF LAND.—If, at the date of the cession of California to the United States under the laws of Mexico, there remained anything to be done by the Mexican Government, in order to vest the grantee of land in California with title to the specific land claimed by him, his title was imperfect, and it was necessary for him to present it to the Land Commissioners for approval within two years from the passage of the Act of March 3d, 1851, under the penalty of having the land become a part of the public domain if he failed to do so.

IDEM AS TO PUEBLO LANDS.—Pueblo lands are not exempted from the operation of the above rules.

RIGHT OF PUEBLO TO LAND. — A pueblo, when once legally established, became entitled to four square leagues of land, to be surveyed in the form of a square or quadrangle, and marked by boundaries which could be readily known by official authority.

WHEN RIGHT OF PUEBLO TO LAND FORFEITED.—If, at the date of the cession of California to the United States, a pueblo existed which was entitled to four leagues of land, but the same had not been surveyed and had its boundaries marked by official authority, the title of the pueblo to the land was imperfect, and the same became a part of the public domain, unless an application was made to the Land Commissioners for its confirmation within two years from the passage of the Act of Congress of March 3d, 1851.

APPEAL from the District Court, Third Judicial District, Santa Cruz County.

This was an action of ejectment to recover the possession of a piece of land in the Town of Santa Cruz, County of Santa Cruz. The suit was commenced in April, 1860. The plaintiff claimed that on the 1st day of February, 1860, he was seized of the land in fee simple absolute, and was entitled to the possession of the same. The defendants denied plaintiff's title, and claimed that the land was a part of the public domain of the United States. The plaintiff introduced testimony tending to show that Santa Cruz was a pueblo under the Mexican Government, and that in 1849 Wm. Blackburn was Alcalde of the pueblo, under the appointment of Governor Mason, then acting Military Governor of California under the authority of the United States, and that said Alcalde granted to several persons lots within the pueblo which constituted the demanded premises, and that the plaintiff deraigned title to the same through the grantees. The defendants moved for a nonsuit, because it had not been shown that the claim of the Pueblo of Santa Cruz had been presented to the Board of United States Land Commissioners organized by the Act of March 3d, 1851, for the settlement of land claims in the State of California, nor had it been shown that any of the titles under which plaintiff claimed had been presented for confirmation. The Court granted the motion, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Eugene Liés,* and *Elisha Cook,* for Appellant.

The objection raised is, that our claim was never presented to the Land Commission.

The Town of Santa Cruz sold the lands in question for the sum of one thousand three hundred and ninety-nine dollars and forty-three cents, and received the money. It subsequently neglected to present the corporation claim to the

54

Land Commission. That it should thence follow that the plaintiff has lost all right to the lands, seems to be so inequitable a proposition that we may well expect, on investigation, to find it untenable.

The language of the fourteenth section of the Act of 1851, is more than usually confused. It cannot be too critically examined: "*The provisions of this Act shall not extend* to any town lot, farm lot, or pasture lot, held under a grant from any corporation or town [or individual?] to which [whom?] lands may have been granted for the establishment of a town by the Spanish or Mexican Government, or the lawful authorities thereof, NOR TO ANY CITY, OR TOWN, OR VILLAGE LOT, WHICH CITY, TOWN, OR VILLAGE EXISTED ON THE SEVENTH OF JULY, 1846." The words in small capitals would seem to cover our case.

And section thirteen will not apply to our claim any more than the other sections of the Act. The section proceeds: "*But the claim for the same SHALL be presented by the corporate authorities of the said town*, or where the land on which the said city, town, or village [is situate?] was originally granted to an individual, the claim *shall* be presented by or in the name of such individual." We find in the words above italicised a duty laid upon the corporate authorities of the Town of Santa Cruz, to perfect the title of their grantee (the plaintiff in this case) to the lands in question by presenting their claim to the tract—to whom we are not told—but we infer *ex necessitate* that the claim should have been presented to the Land Commission, notwithstanding that "the provisions of this Act shall not extend," etc. Yet, under the law of Congress of June 2d, 1862, (Stats. at Large, 12, 410,) the claim might yet, it seems, be presented to the Surveyor General.

At all events, we find no penalty imposed for the neglect of the duty so imperatively laid; least of all, any penalty upon the grantees of the town. The first clause of the section removes the penalty of forfeiture, as regards the case before us, and no other is imposed. The last words of the

section are puzzling. They cannot refer to cities, towns, or villages not in existence already on the 7th of July, 1846. As to those, the right of entry for the benefit of the inhabitants depends on altogether a different law. One word, it seems to us, must be interpolated: " And where any [such] city, town, or village shall be in existence at the time of passing this Act, the claim for the land embraced within the limits of the same *may* be made by the corporate authority of the said city, town, or village:"

The towns not in existence in 1851, are *commanded* to present the claim of their grantees; the towns in existence at that time are *permitted* to do so. That this reading involves an absurdity, we freely confess, yet we fail to discover any other possible reading. A solution might, perhaps, be offered by treating the word " shall " as it was treated in the case of *Washington* v. *Page,* 4 Cal. 389, viz : as merely directory, or to consider, in the language of this Court, (*Cooke* v. *Spears,* 2 Cal. 412,) "that the words 'may' and 'shall' should be considered as convertible terms." This solution, while it disposes of some difficulties, fails to account for a repetition which, in this view, was wholly unnecessary. Where there is no difference why attempt a distinction? At all events, if Congress intended to impose an absolute duty upon the municipality of Santa Cruz, their attempt was unconstitutional, for reasons of still higher import than those mentioned in the case of *Minturn* v. *Brower and Howlett.* So that whether the language used be considered as mandatory or directory, the plaintiff had no means of compelling Santa Cruz to present her claim, and, certainly, no power under the law of presenting his own.

But if the title of the Town of Santa Cruz was a perfect title at the time of the conquest, it need not have been presented to the Land Commission, (*Minturn* v. *Brower and Howlett,* 24 Cal. 644,) and need not now be presented to the Surveyor General.

We submit that the grant which, under the law as interpreted in the case of *Hart* v. *Burnett,* we are entitled to assume

was made by the Mexican authorities to the Town of Santa Cruz, must, of necessity, have been a perfect grant.

The assent of the legislative power was not necessary to such a grant. This and other requisites imposed by Articles Two, Three, Four, Five, Six, Seven, and Eight of the Regulations of 1828, only apply to grants to individual petitioners, or to contractors of immigration. Even where an individual undertook to found a new town, he had to do with the Government alone. (Articles 10, 11, 12.)

The thirteenth Article seems to have contemplated just such a case as that of Santa Cruz, viz: a case where a town might grow up spontaneously, or under more or less governmental initiative. "The reunion of many families into one town shall follow in its formation * * * the rules established by the existing laws for the other towns of the Republic."

This is precisely what we claim, viz: the benefit of Law 10, Title 7, Book IV, of the Recopilacion de Indias; the Instructions of Bucarele, 1773; the Regulation of Felipe de Neve, 1779; the Order of the Comandante General, 1786; the Plan of Pitic, 1789; the Order of Pedro de Nava, 1791; and the *Ordenanzas de Tierras y Aguas.*

*Patterson, Wallace & Stow,* for Respondents.

The nonsuit was proper upon the ground that (admitting for the argument there was a pueblo owning lands under the law and Government of Mexico) the claim of the town had not been presented or confirmed under the Act of March 3d, 1851. (9 U. S. Stats. at Large, 331, Secs. 8 and 14.) The extent or limits of the town or its lands is unknown, and require demarcation and segregation. (*Strother* v. *Lucas,* 12 Peters, 448; *Barry* v. *Gamble,* 3 How. 55; *League* v. *De Young,* 11 How. 202, 203.)

All claims to lands that are withheld from the Board of Commissioners during the legal term for presentation, are treated as non-existent, and the land as belonging to the pub-

lic domain. (*United States* v. *Fossatt*, 21 How. 447, 448; *United States* v. *Fossatt*, 22 How. 291; 19 Ala. 336, 392, 393.)

In *De la Croix* v. *Chamberlain*, 15 Wheat. 599, it was held incumbent upon the plaintiff in ejectment claiming under Spanish concession to prove affirmatively that he has presented his claim to the Board of Commissioners and obtained confirmation. *Estrada* v. *Murphy*, section fourteen, as imperatively required the presentation of the claim by the town as section eight of claims of individuals. And if appellant's reasoning, to wit:—1st. There was a person who assumed to be Alcalde; 2d. Such Alcalde assumed to make grants; *ergo*, there was a pueblo—is correct, it only proves that the claim should have been presented and confirmed. Section fourteen does not prohibit plaintiff from presenting his claims under the eighth section; but if the town claim was presented and confirmed, the confirmation should inure to the benefit of the grantees of the town.

By the Court, SANDERSON, J. :

For all the purposes of the present case we shall assume that Santa Cruz, at the date of the cession of California to the United States, was a Mexican pueblo, and, as such, entitled, under the Mexican law, to four square leagues of land; and that the American Alcalde, by whom the grants under which the plaintiff claims the lots in question were made, had all the powers with which Alcaldes were or could be vested under the Mexican law; and further, that he had the power to dispose of the lots in question, by sale as well as gift, and to non-residents as well as residents. This leaves for our consideration the single question, whether Santa Cruz forfeited her claim to four square leagues of land by neglecting to present the same to the Board of Land Commissioners for confirmation, as provided in the Act of Congress of the 3d of March, 1851, to ascertain and settle private land claims in California.

By the eighth section of the Act of Congress of the 3d of

March, 1851, to ascertain and settle private land claims in this State, each and every person claiming lands by virtue of any title derived from the Spanish or Mexican Government is required to present the same to the Board of Land Commissioners for examination and confirmation if found valid.

By the thirteenth section it is provided that all lands, the claims to which have been finally rejected by the Commissioners, or which shall have been decided to be invalid by the District or Supreme Court of the United States, and all lands the claims to which shall not have been presented to the Commissioners within two years after the date of the Act, shall be deemed, held, and considered as a part of the public domain of the United States.

By the fourteenth section it is provided that the provisions of the Act shall not extend to any town lot, farm lot, or pasture lot held under a grant from any corporation or town to which lands may have been granted for the establishment of a town by the Spanish or Mexican Government, or the lawful authorities thereof, nor to any city, or town, or village lot, which city, town, or village existed on the 7th of July, 1846; but the claim for the same shall be presented by the corporate authorities of the said town; or where the land on which the said city or town, or village, is situated was originally granted to an individual, the claim shall be presented by or in the name of such individual; and the fact of the existence of the said city, town, or village on the 7th of July, 1846, being duly proven, shall be *prima facie* evidence of a grant to such corporation, or to the individual under whom the said lotholders claim; and where any city, town, or village shall be in existence at the passage of the Act, the claim for the land embraced within the limits of the same may be made by the corporate authorities of the said city, town, or village.

While the language of this section, as suggested by counsel for the appellant, is not a little obscure in some respects, we do not understand that it was intended thereby

to except pueblo lands from the operation of the provision in relation to forfeiture contained in the thirteenth section. On the contrary, we think it was the intention of Congress to put pueblo lands upon the same footing as other lands in that respect. The leading object of the fourteenth section seems to have been the consolidation, for the purposes of the proceedings before the Land Commissioners, of all claims to lands held under municipal grants from the same municipality into one case, to be prosecuted in the name of the municipality, instead of requiring each holder of a town, village, or city lot to present his claim separately, which, without any occasion therefor, would have vastly increased the number of cases to be investigated by the Commissioners. What other purposes, if any, Congress may have intended to subserve by the passage of the fourteenth section it is unnecessary to determine, so far as we are advised, for the purposes of the present case.

It was held in *Estrada* v. *Murphy*, 19 Cal. 248, following the lead of a number of cases decided by the Supreme Court of the United States, there cited, that the Act of Congress above referred to is valid as to lands held under imperfect or merely equitable titles, whatever doubt might exist as to its validity in respect to land held under perfect titles. That was the case of a grant of quantity, and not of a specific tract; it was for two square leagues situated within exterior boundaries admitted to embrace a much larger quantity; and it was considered that the grant passed only an interest in the specified quantity, to be afterwards measured and laid off by the Government; and until thus measured and segregated, the interest of the grantee could not attach to any specific portion of the general tract, and the title of the grantee could not become perfect until that had been done.

In the subsequent case of *Minturn* v. *Brower*, 24 Cal. 644, it was held that the holder of a perfect title could not be required by Congress to present his claim to the Land Commissioners for confirmation, and that if the Act of the 3d

of March, 1851, was intended to have that effect, it was, so far, invalid; but as to what would be regarded as a perfect title, nothing was said directly, for the reason that the question was not involved in the case. Upon that question, however, we consider that there can be no substantial controversy. It is sufficient to say generally, that if at the date of the cession there remained anything to be done under the laws of Mexico applicable to the case by the Mexican Government, in order to vest in the grantee the title to the specific land claimed by him, his title was imperfect, and it was therefore necessary for him, under the Act of Congress, to present it to the Land Commissioners, under penalty of having his claim treated as non-existent, and the land considered and deemed to be a part of the public domain after the time limited by that Act.

Does the case show that Santa Cruz, at the date of the cession of California to the United States, was vested with a title to the land in question, which was then perfect, under the laws of Mexico in relation to pueblo lands?

A pueblo, when once legally established and organized, according to the case of *Hart* v. *Burnett*, 15 Cal. 541, became immediately entitled to all the rights and privileges which the general laws in relation to ˈpueblos conferred, in the absence of any special laws or regulations which were sometimes provided, among which was the right to four square leagues of land, to be located in a square, with a plaza for a central point, if there were no natural obstacles in the way of such location; otherwise the selection was to be made in some other quadrangular form. If the land could not be located in a square, by reason of the sea, mountains, lakes, wastes, deserts, and the like, it might be selected in a larger square, which would include them within its boundaries, but reject them in the computation of quantity; or the location might be made in some direction, if possible, by which such obstacles would be avoided; but in any event, the boundaries were required to be at least five leagues from any other city, town, or village inhabited by Spaniards, and previously

settled; and the location had also to be made so as not to prejudice any Indian tribe or private individual. (Plan of Pitic, 2d.) Doubtless, as suggested in *Hart* v. *Burnett*, 15 Cal. 542, no formal written grant was required. The pueblo, upon its formation and official recognition as such, became immediately vested, under the operation of the general laws upon that subject, with a claim to four leagues of land, thereafter to be selected in some one of the modes already mentioned. Though it would seem from the Act of the Territorial Deputation of California of the 6th of August, 1834, that it was intended that thereafter in California a formal application for land should be made by the Ayuntamientos, for by the first section it was provided that "the Ayuntamientos shall make application through the usual channels requesting lands to be assigned to each pueblo for *ejidos* and *proprios*." But be that as it may, it is clear, from the nature of the case, and all the laws and regulations bearing upon the subject of which we are advised, and especially from the Plan of Pitic, that the four leagues had to be surveyed and marked by boundaries which could be readily known by official authority. Until that was done it could not be known what particular land had become the property of the pueblo, nor could it be subdivided into *solares* and *suertes*, for distribution among the inhabitants. Independent of other sources of information, this is apparent from the second section of the Plan of Pitic, by which it is directed that the four leagues of land, as already suggested, shall be selected in a square, or in some other more convenient quadrangular form, and marked in such a manner that its true boundaries shall be known; also, from the sixth section, by which it is declared that "The tract of four leagues granted to the new settlement, being measured and marked out, its pastures, woods, water privileges, hunting, fishery, stone quarries, fruit trees, and other privileges, shall be for the common benefit of the Spaniards and Indians residing therein," etc.

So far as the present case shows, the pueblo lands of Santa

55

Cruz had not been located and marked out prior to the cession of California to the United States; and, under the rule in *Estrada* v. *Murphy*, its title, whatever it may have been, was therefore imperfect, and being imperfect, was therefore within the operation of the Act of Congress.

Our conclusion is, that, admitting Santa Cruz to have been a pueblo, and as such entitled to four leagues of land at the date of the cession, her claim thereto has become non-existent for the reasons stated, and that the plaintiff's title has therefore failed.

Judgment and order affirmed.