[No. 11373. In Bank. — December 29, 1887.]

# THOMAS PHELAN ET AL., RESPONDENTS, v. EDWARDO POYORENO ET AL., APPELLANTS.

MEXICAN GRANT — PERFECT TITLE UNDER MEXICAN LAW. — Mexicans who, previous to the acquisition of California by the United States, had acquired from the governments of either Spain or Mexico a perfect title to lands in California, and who chose to remain in the acquired territory, were, by the treaty of Guadaloupe Hidalgo, protected in the ownership and enjoyment of their lands the same as though no change of sovereignty had occurred.

ID. — CONFIRMATION BY LAND COMMISSIONERS. — Persons whose titles to lands were perfect at the time of the acquisition of California by the United States were not compelled to submit them for confirmation to the board of land commissioners appointed under the act of Congress of March 3, 1851, nor did they forfeit their lands by a failure to present them to such board for confirmation; and titles thus vested may be asserted and maintained like other perfect titles in the courts of California.

ID. — PRESENTATION FOR CONFIRMATION. — The holders of titles to land in the ceded territory which were perfect at the date of the treaty could, if they so elected, present them to the board of commissioners for confirmation, but were not bound to do so.

ID. — STEPS ESSENTIAL TO PERFECT TITLE. — Under the Mexican law, a grantee of a tract of land acquired a perfect title when he was able to show therefor a petition, with a *diseño*, an order of reference, an *informe* by the proper officer, a decree of concession, a *titulo*, the approval of the departmental assembly, the order for survey and judicial possession, with the report of the proper officer that such survey was made and possession given.

ID. — DESCRIPTION OF GRANTEE — OMISSION OF MIDDLE NAME. — The validity of a title under the Mexican law is not affected by the fact that in some of the documents constituting the chain of title the grantee was described without stating his middle name when the identity of the grantee is otherwise sufficiently shown therein.

ID. — DESCRIPTION OF LAND BY NAME. — A Mexican grant which describes the land intended to be conveyed by its known designation, by which it can be identified without specifying its boundaries, is valid.

APPEAL from an order of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion of April 25, 1887.

*Gardiner & Stephenson,* for Appellants.

The predecessor in interest of the appellants had a perfect title under the Mexican law, and evidence thereof was admissible. (*Minturn* v. *Brower,* 24 Cal. 669; *United States* v. *Vallejo,* 1 Black, 541; *United States* v. *Workman,* 1 Wall. 762; Hall's Mexican Law, secs. 503, 504; *Hornsby* v. *United .States,* 10 Wall. 238; *United States* v. *Reading,* 18 How. 7; California Land Titles, 2–26; *United States* v. *Percheman,* 7 Pet. 86.) The description contained in the documents constituting the chain of title was sufficient. (*People* v. *Leet,* 23 Cal. 164; *Cutter* v. *Caruthers,*. 48 Cal. 184; *Haley* v. *Amestoy,* 44 Cal. 132.) The United States patent is not conclusive against a prior perfect. Mexican title. (*Hale* v. *Akers,* 69 Cal. 160; *Roderigues* v. *United States,* 1 Wall. 588; *Teschemacher* v. *Thompson,* 18 Cal. 27.)

*Bicknell & White,* and *Chase Gitchell,* for Respondents.

The record does not show a perfect grant from the Mexican government. (*Stevenson* v. *Bennett,* 35 Cal. 431; *Banks* v. *Moreno,* 39 Cal. 233, and cases cited; *Carpentier* v. *Montgomery,* 13 Wall. 488; *Bernal* v. *Lynch,* 36 Cal. 145; *Schmitt* v. *Giovanari,* 43 Cal. 622; *Pico* v. *United States,* 2 Wall. 281.) The patent from the United States passed the legal title to the patentees. (*Estrada* v. *Murphy,* 19 Cal. 248; *Clark* v. *Lockwood,* 21 Cal. 222; *Wilson* v. *Castro,* 31 Cal. 438; *Rico* v. *Spence,* 21 Cal. 504; *Salmon* v. *Symonds,* 30 Cal. 301; *Leese* v. *Clark,* 18 Cal. 571; *United States* v. *Fossatt,* 21 How. 448; *Higueras* v. *United States,* 5 Wall. 832.)

The COURT.— This cause was decided April 25, 1887. A rehearing was subsequently ordered, and we have again reviewed the case.

Upon such review we find no sufficient cause to alter or modify the conclusion reached in the former decision.

The judgment and order appealed from are reversed,

for the reasons given in the former opinion on file, and the cause remanded for a new trial.

The following is the opinion above referred to:—

SEARLS, C. — This is an action to quiet title to a tract of land, parcel of the rancho Paso de Bartolo Viejo, in the county of Los Angeles.

Plaintiffs had judgment, from which, and from an order denying a new trial, defendants appeal.

Defendants claim,—1. Title to an undivided one-tenth part of the premises; and 2. An easement or right of way over the land for a water-ditch, designated as the Banta ditch, and the right to conduct water through the same for irrigation and other purposes.

The plaintiffs claim the land in controversy through sundry mesne conveyances from Pio Pico and Juan Perez, to whom it was granted by patent on the fifth day of August, 1881, by the government of the United States.

The recitals in the patent show that the claim of the patentees is "founded on a Mexican grant to Juan Crispin Perez, made on the twelfth day of June, A. D. 1835, by José Figueroa, then governor of Upper California, and approved by the departmental assembly the twenty-ninth day of August, A. D. 1839."

The patent was issued upon petition to the board of land commissioners, made after the death of Juan Crispin Perez.

Defendants' predecessor, one of the heirs of the said Perez, did not join in said petition, was not before said board, and did not submit herself to its jurisdiction; but relies upon the *Mexican grant* as giving a *complete, indefeasible, definitive title in fee* to the Mexican grantee, who was her father.

In other words, the contention of defendants is, that Juan Crispin Perez, their predecessor, had a perfect title in fee, derived from the Mexican government, to the

property in controversy, and that, as his heir, Maria Antonio Romero, under whom they claim, was owner of one tenth thereof.

For the purpose of sustaining this contention on their part, defendants, after the plaintiffs had introduced the patent hereinbefore referred to in evidence, and deduced title thereunder in themselves, offered in evidence the Mexican *expediente*, showing a grant from Governor Figueroa, approval of departmental assembly, also the juridical possession of Juan Crispin Perez, to each of which plaintiffs objected on the following grounds: "That the *expediente* purported to show the proceedings anterior to said patent which conveyed the legal title; that such offer is incompetent, irrelevant, and immaterial; and that said patent is conclusive in this case."

To the offer in evidence of a certified copy of the evidence of juridical possession of said rancho by Perez, the further objection was made that there is no allegation in the answer setting up a trust in the plaintiffs.

The objections were sustained by the court, and the proffered evidence excluded.

Like rulings were made upon the offers of defendants to show title in themselves to one tenth of the rancho under Juan Crispin Perez, and these rulings are severally assigned as error.

The proposition of appellants is that the land in question was originally the property of and subject to disposition of the Mexican government.

That prior to the treaty of Guadaloupe Hidalgo, whereby the public domain of California was ceded to the United States, the land in question was conveyed to and the title vested in Juan Crispin Perez, under whom they claim title, and that a perfect title having thus vested in their grantor, it was not defeated by the subsequent action of the board of commissioners, organized under the act of Congress of March 3, 1851, for the purpose of

determining the validity of claims to land in California, or by the subsequent patent from the United States to plaintiffs' grantors.

Upon the main proposition as presented we are relieved from discussion by the previous rulings of this court.

In *Minturn* v. *Brower*, 24 Cal. 644, Justice Curry, in an able and exhaustive opinion concurred in by the court, held in substance:—

1. That Mexicans who, previous to the acquisition of California by the United States, had acquired from the governments of either Spain or Mexico a perfect title to lands in California, and who chose to remain in the acquired territory, were by the treaty of Guadaloupe Hidalgo protected in the ownership and enjoyment of their lands the same as though no change of sovereignty had occurred.

2. That persons whose titles to lands were *perfect* at the time of the acquisition of California by the United States were not compelled to submit them for confirmation to the board of commissioners appointed under the act of Congress of March 3, 1851, nor did they forfeit their lands by a failure to present them to such board for confirmation, and that the titles thus vested may be asserted and maintained like other perfect titles in the courts of the country.

3. That holders of titles to lands in the ceded territory which were perfect at the date of the treaty could, if they so elected, present them to the commission for confirmation, but were not bound to do so. (See also *De Arguello* v. *Greer*, 26 Cal. 627; *Miller* v. *Dale*, 44 Cal. 577; *Seale* v. *Ford*, 29 Cal. 107; *Steinbach* v. *Moore*, 30 Cal. 507; *Stevenson* v. *Bennett*, 35 Cal. 431; *Hale* v. *Akers*, 69 Cal. 160; *Teschemacker* v. *Thompson*, 18 Cal. 27; *Estrada* v. *Murphy*, 19 Cal. 248; *Beard* v. *Federy*, 3 Wall. 478.)

Assuming, then, as we do, that, upon both principle

and authority, the position of appellants is tenable, it only remains to determine whether the proffered evidence was of such a character as to vest in Juan Crispin Perez the legal title to the Rancho Paso de Bartolo Viejo by grant from the Mexican government.

Turning to the several documents offered as establishing a grant from the Mexican government, we find a petition indorsed: "*Expediente* concerning the place Paso de Bartolo Viejo, asked for his occupation and benefit by Juan Crispin Perez."

The petition is addressed to the superior political chief; is dated "Pueblo of Los Angeles, September 21, 1833."

It then proceeds to say that Juan Perez of Los Angeles is the owner of stock, and having no land, solicits a tract extending from "the Pass of Bartolo Viejo to La Cañada Verde, and from thence to that of the *puenta* that enters into the principal road of San Gabriel, and from thence to the dam of said mission"; he recites that a portion of the land is within the boundaries of the mission, but that that community has conceded it to him in order that he may ask a grant, except a portion which belongs to the Señores Nieto, etc., and says he will present a map of the land as soon as possible, and is signed by Andreas Pico, "at the request of Juan Perez, who cannot write."

On the margin of the petition is a decree signed by Figueroa, the superior political chief, and Austin V. Zamorano, secretary, referring the petition to the *ayuntamiento* of the *pueblo* of Los Angeles for an examination as to the qualifications of the applicant, the character and location of the land, etc., and requiring also that the *expediente* be sent to the priest of the mission of San Gabriel for his report.

The reports were received in due time, and thereafter the matter was referred to the constitutional *alcalde* of Los Angeles, for a further and more specific report as to the citizenship of the applicant, his conduct, family, etc., and as to the ownership of the land, etc.  Upon the

coming in of this and some other reports favorable to the applicant, a decree was made by the governor, reciting the several steps taken, and declaring Juan Crispin Perez the owner in fee-simple (under the conditions mentioned) of the lands known by the name of Paso de Bartolo Viejo, and describing them as in the petition.

Then follows the grant of the same date (June 12, 1835), attested by the governor and secretary, by which the land is conveyed to Juan Crispin Perez, subject to the approval of the territorial assembly, on condition that he shall within one year built a house thereon and inhabit it, etc. It also provides that when the ownership is confirmed to him, he shall petition the respective judge to give him juridical possession, whereby the boundaries shall be marked off and landmarks placed, and further provides that if the grantee shall violate the conditions of the grant he shall lose his right to the land, and the same may be denounced by another.

On the twenty-ninth day of August, 1839, the departmental assembly approved the concession, and ordered the *expediente* to be transmitted to the political chief for his determination.

Juridical possession of the land was given to the grantee, by order of the governor, by Manuel Dominguez, first justice of the peace, and judge of first instance of Los Angeles, on the thirtieth day of April, 1842.

According to the return made by the justice, a measurement of the land was made, the boundaries marked, landmarks placed, etc.

The record presents every link essential in a chain of title under the Mexican law.

The petition, with a *diseño*, an order of reference, an *informe* by the proper officer, a decree of concession, a *titulo*, the approval of the departmental assembly, the order for survey, and juridical possession, with the report of the proper officer that such survey was made and possession given.

It is objected by respondent: —

1. That the petition is by Juan Perez (not Juan Crispin Perez).

Referring to the *expediente,* and we find, as before quoted, that the application is by Juan Crispin Perez, for the "place Paso de Bartolo Viejo." In the petition following, and in some of the subsequent proceedings, he is described as Juan Perez, but in the decree of the governor, the *titulo* or patent, and subsequent proceedings, he is named as Juan Crispin Perez, with such reference to the petition and former documents that no doubt can be entertained as to his identity. As his middle name is not essential to the validity of the proceedings, and can only be of importance in identifying him, and as that end is reached, we are of opinion the objection is not well taken.

2. It is further objected that the description is defective.

In the decree by the governor of June 12, 1835, "Juan Crispin Perez is declared, under the conditions herein mentioned, the owner in fee-simple of the lands *" known by the name of Paso de Bartolo Viejo,* joining on the old road of Santa Gertrudes, a rancho of that name, the river and mission of San Gabriel, by the hills on the northeast, and the hills of Cañada Verde," and the same description is carried into the patent, where the tract is described as "the lands known as Paso Bartolo Viejo," etc.

A description of a tract of land by name is sufficient, if it is known and can be identified by such name. (*United States* v. *Moreno,* 1 Wall. 400; *People* v. *Leet,* 23 Cal. 162.)

In *Castro* v. *Gill,* 5 Cal. 42, it was said: "The declaration describes the land by a certain name, and this is as good a description as one by metes and bounds, if it can be rendered sufficiently certain by the evidence."

A conveyance of land by known designation without specifying boundaries is good. (*United States* v. *Sutherland*, 19 How. 363; 1 Greenl. Ev., sec. 286.)

It follows that if we discard from the *expediente* all that is contained therein of description, except the *name*, "the lands known as Paso Bartolo Viejo," or as it appears in the decree, "the lands known by the name of Paso de Bartolo Viejo," the grant is yet not void for uncertainty.

It was therefore properly admissible in evidence, as against the objection made. Had it been objected to for want of proofs showing that the name of the rancho was so well known that from it the boundaries could be defined, quite a different question would arise, but the objection to the evidence was based upon the ground that the *expediente* purported to show proceedings anterior to the patent under which plaintiffs held, and was therefore immaterial, etc.

Had the objection been made that the *expediente* was not sufficient without further evidence to establish the fact that from it the extent and boundaries of the land could be determined, *non constat* but that such evidence would have been furnished.

The other technical objections to the *expediente* were not made in the court below, and need not be considered.

We are of opinion that the refusal of the court to admit the documentary evidence offered by defendants was error.

Upon the points made by appellants, in reference to the findings and rulings of the court upon the questions of the right of way, easement, and license of defendants for a water-ditch, we need only say that the evidence was conflicting, and the findings should not be disturbed.

For the error indicated, the judgment and order appealed from should be reversed, and the cause remanded for a new trial.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.

THORNTON, J., dissented.