[No. 8501. In Bank. — January 28, 1886.]

## THE PEOPLE EX REL. ANDREW J. BRYANT, APPELLANT, *v.* SAMUEL W. HOLLADAY ET AL., RESPONDENTS.

SAN FRANCISCO — LAFAYETTE PARK — DEDICATION TO PUBLIC USE — JUDGMENT IN BAR — TITLE OF UNITED STATES. — The action was brought to cause the removal of certain buildings and fences from a tract of land designated upon the map of the city and county of San Francisco as Lafayette Park. The complaint alleged that on the 11th of March, 1858, the land had been dedicated to public use as a public square, and that the dedication had been accepted by the public. The defendants denied that the land ever had been dedicated or was a public park, and set up in bar of the action a judgment rendered on the 11th of July, 1864, in an action brought by the attorney-general, in the name of the people, against the defendants and their predecessors, by which it was adjudged that the land in question never had been dedicated to public use, but was the private property of the defendant Holladay. At the time of the commencement of the former action, and at the time issue therein was joined, the legal title to the land was in the government of the United States, and did not pass from it until the passage of the act of Congress of July 1, 1864, and then only in trust for the uses and purposes specified in the ordinances of the city and county of San Francisco, which were ratified by the act of the legislature of March 11, 1858. *Held*, that the

title which passed to the city and county of San Francisco, by the act of July 1, 1864, was unaffected by the judgment pleaded in bar: 1. Because it was acquired long after issue was joined in the action in which the judgment was rendered and the cause submitted for decision, and was not put in issue therein; and 2. Because the attorney-general of the state had no power to submit the title of the government of the United States to adjudication.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*John Lord Love, William Matthews, William Craig, J. H. Meredith,* and *J. F. Cowdery,* for Appellant.

The title acquired under the act of Congress of July 1, 1864, was not put in issue in the former action, and could not constitute a bar. (*Knight* v. *Roche,* 56 Cal. 26; *Valentine* v. *Mahoney,* 37 Cal. 396; *People S. B.* v. *Hodgdon,* 64 Cal. 95; *Shay* v. *McNamara,* 54 Cal. 175.) Neither the state nor the city of San Francisco had any proprietary interest in the land until it was granted to the city, in trust for the people, under the act of July 1, 1864. (*Hoadley* v. *San Francisco,* 50 Cal. 274; *People* v. *Pope,* 53 Cal. 451; *San Francisco* v. *Canavan,* 42 Cal. 555; *Branham* v. *San Jose,* 24 Cal. 603; *Leese* v. *Clark,* 18 Cal. 573; *Hart* v. *Burnett,* 15 Cal. 549.) Congress had full power over the pueblo title, and could do with it what it liked. (*Townsend* v. *Greeley,* 5 Wall. 326; *Grisar* v. *McDonald,* 6 Wall. 363; *Palmer* v. *Low,* 98 U. S. 16; *Beard* v. *Federy,* 3 Wall. 492; *Morrow* v. *Whitney,* 95 U. S. 553; *Ryan* v. *Carter,* 93 U. S. 78; *Bernal* v. *Lynch,* 36 Cal. 135; 9 Wall. 315; *Foster* v. *Neilson,* 2 Pet. 314.) The attorney-general of California had no power to submit the title of the United States to adjudication. (*Carr* v. *United States,* 98 U. S. 433; *United States* v. *Lee,* 106 U. S. 217; *Shary* v. *Contra Costa Co.,* 34 Cal. 284; *Leet* v. *Rider,* 48 Cal. 623.)

*S. W. Holladay, Mastick, Belcher & Mastick, R. H. Lloyd,* and *Jarboe, Harrison & Goodfellow,* for Respondents.

The act of July 1, 1864, did not pass a new title to the city; it only strengthened and quieted its former title, and operated by relation to make good the claim of the city to the land filed in 1852 before the board of land commissioners. (*Palmer* v. *Low,* 98 U. S. 17; *Grisar* v. *McDowell,* 6 Wall. 380; *Clark* v. *Lockwood,* 21 Cal. 220; *Landes* v. *Brant,* 10 How. 373; *Merryman* v. *Bourne,* 9 Wall. 600; *Seabury* v. *Arthur,* 28 Cal. 150; *Hart* v. *Burnett,* 15 Cal. 576.) The issues in the former action were identical with those in the present, and the former judgment is a bar. (*Greathead* v. *Bromley,* 7 Term Rep. 456; *Outram* v. *Morewood,* 3 East, 346; *Young* v. *Black,* 7 Cranch, 565; *Caperton* v. *Schmidt,* 26 Cal. 479; *McCreery* v. *Fuller,* 63 Cal. 30; *United States* v. *Price,* 9 How. 83; *United States* v. *Throckmorton,* 98 U. S. 61; *United States* v. *Halleck,* 1 Wall. 439; *Case* v. *Beauregard,* 101 U. S. 688; *Kilheffer* v. *Kerr,* 17 Serg. & R. 319.)

Ross, J.—This action was instituted at the relation of A. J. Bryant by the attorney-general of the state, in the name of the people, to cause the removal from a tract of land, designated upon the map of the city and county of San Francisco as Lafayette Park, certain buildings and fences maintained thereon by the defendants. The complaint alleges that the land in question was "heretofore, to wit, on the eleventh day of March, A. D. 1858, by the lawful owner and holder thereof, lawfully dedicated to public use as a public square by the name of Lafayette Park, and such dedication accepted by the public, and then was, and still is, laid down upon the official map of said city and county as a public square as aforesaid." It is also averred that the defendants maintain buildings and fences on the land, which constitute a public nuisance.

In their answer, the defendants admit the maintenance

of the buildings and fences, deny that the land ever was dedicated to public use, or that it ever was a public park; and in addition, set up in bar of the action the judgment given in a certain action commenced by the attorney-general on the 16th of November, 1863, in the name of the people at the relation of George T. Bohen, against the defendants and their predecessors in interest.

The complaint in that case averred that the said tract of land called Lafayette Park had been theretofore dedicated and accepted by the public as a public square; that the defendants were erecting and maintaining fences and other improvements thereon, and asked that those erected be removed, and defendants be enjoined from erecting or maintaining others. On the 27th of November, 1863, the defendants filed their answer in the action, in which they denied the alleged dedication, and averred title in themselves to the premises. The issue thus joined was on the 21st of April, 1864, submitted to the late Fourth District Court for its decision, and on the 11th of July, 1864, that court rendered its judgment, by which it was adjudged that no such dedication as was alleged in the complaint was ever made, but that, on the contrary, the property in question was, at the time of the commencement of that action, and at the time of the trial thereof and judgment therein, the private property of the defendant Holladay.

The question now before us is, whether or not the judgment just referred to is a bar to the present action. It is urged on behalf of the people that this cannot be so, because at the time the former action was commenced, and at the time issue therein was joined, the legal title to the land was in the government of the United States, and did not pass from it until the passage of the act of Congress of July 1, 1864, and then only in trust for the uses and purposes specified in the ordinances of the city and county of San Francisco, which were ratified by the act of the legislature of date March 11, 1858.

There can be no doubt that to the extent just stated, at least, the counsel for the plaintiff are correct. " The nature of the title of San Francisco to her pueblo lands," said the Supreme Court of the United States, in *Palmer* v. *Low,* 98 U. S. 16, " has often been the subject of consideration in this court, and was carefully stated by Mr. Justice Field in *Townsend* v. *Greeley,* 5 Wall. 326, and *Grisar* v. *McDowell,* 6 Wall. 363. At the time of the conquest, the pueblo, of which the city of San Francisco became the successor, did not have an indefeasible estate in the unconveyed portions of those lands, but only a limited right of disposition and use, subject in all particulars to the control of the government of the country. ' It was a right which the government might refuse to recognize at all, or might recognize in a qualified form.' (6 Wall. 373.) Upon the conquest, the United States succeeded to the rights and authority of the Mexican government, subject only to their obligations under the treaty of Guadalupe Hidalgo. As before that time the fee had not passed out of the government of Mexico, it was transferred to the United States by the conquest and the treaty which followed. Before, therefore, the estate of the pueblo could become absolute and indefeasible, some action was required on the part of the United States. It is conceded that this action was not taken until the act of July 1, 1864. Down to that time the city held under its original imperfect Mexican title only. Afterwards, it was possessed of the fee ' for the uses and purposes specified ' in the Van Ness ordinance."

There are numerous decisions of this court to the same effect. The title which passed to the city and county of San Francisco by the act of Congress of July 1, 1864, was unaffected by the judgment pleaded in bar herein: first, because it was acquired long after issue in the action in which that judgment was rendered was joined, and the cause submitted for decision, and was not put in issue therein (*People's Savings Bank* v. *Hodgdon,* 64 Cal. 95;

*Valentine* v. *Mahoney*, 37 Cal. 396); and secondly, because the attorney-general of the state had no power to submit to the determination of any tribunal the title of the government of the United States.

The title which the government of the United States conveyed to the city of San Francisco, by the act of Congress of July 1, 1864, was, as the act itself recites, conveyed for the uses and purposes specified in the ordinances of the city that were ratified by the act of the legislature of the state, approved March 11, 1858. To hold the public squares of the city in trust for the use of the people was among those purposes. If the particular piece of land in controversy had been, prior to the passage of the act of Congress of July 1, 1864, dedicated by the city as a public square, Congress, " by granting and relinquishing the title of the United States to the city, for the uses and purposes mentioned in the act of March 11, 1858, ratified and confirmed the dedication, and made it operative upon the legal title, as well as such title as the city held prior to the act of July 1, 1864, and this virtually perfected the dedication." (*Hoadley* v. *San Francisco*, 50 Cal. 274.) To hold that the plaintiffs are concluded, by the judgment pleaded in bar, from showing that there was a dedication to which the title conveyed by the act of 1864 related and which it perfected, would be in effect to hold the title conveyed by the act of 1864 concluded by the former judgment,—which, for the reasons already given, is not the case.

Our conclusion is, that the judgment of the court below, holding the plaintiffs estopped by the judgment given in the action commenced in 1863, is erroneous.

Judgment and order reversed, and cause remanded for a new trial.

McKEE, J., MORRISON, C. J., THORNTON, J., McKINSTRY, J., and SHARPSTEIN, J., concurred.

Rehearing denied.