[No. 8762.   In Bank. — July 30, 1886.]

MILO HOADLEY, APPELLANT, v. CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

SAN FRANCISCO — VAN NESS ORDINANCE — TITLE ACQUIRED BY — ADVERSE POSSESSION — PUBLIC SQUARES. — *Hoadley* v. *City and County of San Francisco*, 50 Cal. 265, to the effect that the plaintiff acquired no title to the public squares in controversy, either by the Van Ness ordinance or by adverse possession, affirmed.

ID. — SELECTIONS FOR PUBLIC SQUARES — RATIFICATION OF BY ACT OF MARCH 11, 1858. — The selections of land for public squares in the city of San Francisco made by the commissioners appointed under ordinances Nos. 822 and 845 of the common council, from land lying west of Larkin Street and southwest of Johnston Street, and designated as squares on the map of the commissioners approved by the board of supervisors on the 16th of October, 1856, were ratified and confirmed by the act of the legislature of March 11, 1858, and are consequently valid, although the

selections embraced more than one block, and more than one twentieth of the land in the possession of one person, and the excess was taken without payment of compensaton as provided in ordinance No. 822.

APPEAL from a judgment of the late District Court of the twelfth judicial district of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to quiet the title of the plaintiff to certain land situated in the city and county of San Francisco west of Larkin Street, and within the corporate limits of the city of San Francisco, as defined in the act of the legislature of April 15, 1851, incorporating the city, and within the four square leagues of land confirmed to the city, as the successor of the pueblo, by a decree of the United States Circuit Court of May 18, 1865. In 1850, the plaintiff entered upon a tract of land including the premises in controversy, and from that time until the 5th of January, 1870, the date of the commencement of this action, continued in the actual, open, and exclusive possession thereof. On the 20th of June, 1855, the common council of the city of San Francisco passed an ordinance, No. 822, commonly called the Van Ness ordinance, whereby the city granted and relinquished to the actual settlers thereon all title and claim of the city to the land lying west of Larkin Street and southwest of Johnston Street, reserving streets, and also the right, within six months from the passage of the ordinance, to select therefrom engine-house lots, schoolhouse lots, and public squares, provided the latter should not embrace more than one block, and that not more than one twentieth of the land in the possession of any person should be taken for the purpose without due compensation. No selections were made of any lots or squares by the commissioners mentioned in the ordinance, nor by the city, within six months from the date of its passage. On the 27th of September, 1855, the common council passed another ordinance, No. 845,

LXX. CAL.—21

which ratified and confirmed ordinance No. 822, and provided for the election of commissioners to discharge the duties specified therein, and directed the commissioners and the city surveyor to furnish, within a month from the date of their appointment, a plan for the location of the streets and lots selected under the Van Ness ordinance. By an ordinance approved December 21, 1855, the commissioners were granted until March 20, 1856, to make the selections, and by a similar ordinance, approved April 7, 1856, the time was extended until April 20, 1856. On the 19th of April, 1856, the commissioners made their report to the common council, accompanied by a map, whereon were laid out six squares, each embracing four blocks, one of which squares, designated as "Alta Plaza," included a part of the land in controversy, and another, designated as "Hamilton Square," included the balance. The land included in such squares embraced more than one twentieth of the whole of the land in the possession of the plaintiff, and no compensation has ever been made or offered to him for the excess. The report and map were received by the board of assistant aldermen, and on the 21st of April, 1856, the report was read and ordered published, and laid over for further consideration. In July, 1856, the governments of the city and of the county of San Francisco were consolidated by an act of the legislature, which provided that the justices of the peace of the former county should constitute an *ad interim* board of supervisors of the city and county. On the 16th of October, 1856, the justices, acting as a board of supervisors, passed an order adopting the map reported by the commissioners, and declared it to be the map of the city of San Francisco in respect to the location and establishment of streets and avenues, and the reservation of public squares in that portion of the former city lying west of Larkin and southwest of Johnston streets. On March 11, 1858, the legislature passed an act ratifying and confirming ordinances Nos. 822 and 845, and the

order of the justices of the peace of October 16, 1856, and
the map therein mentioned.  Afterwards, Congress, on
the 1st of July, 1864, passed an act relinquishing and
granting to the city of San Francisco and its successors
all the right and title of the United States to the land
within the limits of the city as defined in the act of April
15, 1851, for the uses and purposes specified in the ordi-
nances of the city ratified by the act of the legislature
of March 11, 1858.   The further facts are stated in the
opinion of the court.

*S. W. & E. B. Holladay, John Currey,* and *W. C. Bel-
cher,* for Appellant.

The ratification by the state legislature in 1858 of the
city ordinances of 1855, and the order of October 16,
1856, made the latter valid as of their respective dates.
(Broom's Legal Maxims, 676; *Pickett* v. *Hastings,* 47 Cal.
284; *Langdeau* v. *Hanes,* 21 Wall. 530; *Payne* v. *Treadwell,*
16 Cal. 233; *Merryman* v. *Bourne,* 9 Wall. 600; *Seabury*
v. *Arthur,* 28 Cal. 150; *Landes* v. *Brandt,* 10 How. 348;
*Megerle* v. *Ashe,* 33 Cal. 85; *Gibson* v. *Hibbard,* 13 Mich.
217.)   The ordinance No. 822 is a grant *in præsenti,* with-
out exception.   The privilege reserved therein of select-
ing public squares is strictly limited as to time and mode
of selection, size of squares, and compensation for excess
over one twentieth taken from any possessor.   By its
neglect to select in time, the city lost its right of selec-
tion.   (*Merrifield* v. *Cobleigh,* 4 Cush. 178; *Ludlow* v. *N. Y.
etc. Co.,* 12 Barb. 440; *Norris* v. *Hensley,* 27 Cal. 443; *Craig*
v. *Wells,* 11 N. Y. 315; *Railroad Co.* v. *Baldwin,* 103 U. S.
426.)

*John L. Love,* for Respondent.

The case is identical with *People* v. *Holladay,* 68 Cal.
439, and should be affirmed on its authority.   See also
*Hoadley* v. *San Francisco,* 50 Cal. 265; *Sawyer* v. *San
Francisco,* 50 Cal. 370; *Visalia* v. *Jacob,* 65 Cal. 434.

THORNTON, J. — This action was instituted to quiet title of plaintiff to two parcels of land situate in the city and county of San Francisco, and within that portion of said city and county to which the ordinances 822 and 845 of the common council of said city and county, and an order passed by the justices of the peace of the defendant corporation on the 16th of October, 1856, ratified by the act of the legislature of this state approved March 11, 1858, apply. One of the parcels of land in controversy forms a part of Alta Plaza, and the other a part of Hamilton Square.

This cause was here before on appeal (see 50 Cal. 265), and on that appeal this court held that the plaintiff acquired no title to the lots or squares in question either by the Van Ness ordinance or by adverse possession. The questions are presented now under the same state of facts, and the above rulings of the court must be regarded as the law of the case in all its stages. In this condition of things, we see no reason why the points above mentioned should be further considered. (See *Sawyer* v. *San Francisco*, 50 Cal. 370; *People* v. *Holladay*, 68 Cal. 439; *Visalia* v. *Jacob*, 65 Cal. 434.)

The point made on behalf of plaintiff as to the fact that the squares in question embrace more than one twentieth of the land in possession of the plaintiff, and that the excess above such one twentieth was taken without compensation as provided in section 6 of ordinance 822, we regard as settled by this court in *Sawyer* v. *San Francisco*, *supra*, adversely to the contention of the plaintiff.

The reasons on which the rule just above mentioned, as to the taking of more than one twentieth, as settled in *San Francisco* v. *Sawyer*, *supra*, is rested, apply to the point made here that more than one block was taken to make up the squares in controversy. The survey and map of these squares so including four blocks each was approved, ratified, and confirmed by the act of the 11th of March,

1858 (Stats. 1858, p. 53), and from such approval the survey and map above mentioned acquired validity. Whatever rights the plaintiff acquired under the Van Ness ordinance, he took subject to the act of 1858, which approved the survey and map above mentioned.

This is true under any proper application of the doctrine of relation invoked on behalf of plaintiff. The act of approval ratified the ordinance 822, allowing title to be made under it by a possession designated in it, and ratified also ordinance 845 and the order of the justices approving the survey and map above mentioned; and when the act of 1858 was passed, the doctrine of relation could vest in the plaintiff no greater rights than he took under the act of 1858. Any rights which plaintiff derived under the act of 1858 would be subject to all its provisions. At the same time that ordinance 822 was ratified, the order approving the map and survey above mentioned was also ratified, and whatever rights plaintiff took under the act were subject to the provisions of the ordinance and order so ratified. We find in the case no trace of a contract between the plaintiff and any one which ever vested in plaintiff any rights different from those accorded to him herein.

The above embraces all the points in the case which are necessary to be considered. We find no error in the record, and the judgment and order must be affirmed.

Ordered accordingly.

McKEE, J., McKINSTRY, J., SHARPSTEIN, J., and MYRICK, J., concurred.

Rehearing denied.