[No. 13413.    Department One. — December 11, 1891.]

# BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT, *v.* WHEELER MARTIN ET AL., RESPONDENTS.

| 92 | 209 |
| 92 | 418 |
| 93 | 248 |
| 92 | 209 |
| 99 | 151 |
| 92 | 209 |
| 101 | 394 |
| 92 | 209 |
| 119 | 538 |
| 92 | 209 |
| 124 | 356 |
| 125 | 536 |

VAN NESS ORDINANCE — RESERVATION OF SCHOOL-HOUSE SITES — TITLE OF ACTUAL POSSESSOR. — School-house sites set apart or reserved by the city of San Francisco for its own use within its corporate limits as defined by the charter of 1851 did not pass under the Van Ness ordinance to a person or persons who might have been in the actual possession of the lots in 1855.

ID. — EJECTMENT BY BOARD OF EDUCATION— FINDING AS TO RESERVATION — STATEMENT OF EVIDENCE. — In an action of ejectment brought by the board of education against the possessors of a school-house site, where the title of the plaintiff depends upon a reservation by the city under the Van Ness ordinance, and that of the defendants, as derived under the same ordinance, depends upon the fact that it had not been so reserved, the trial court should find directly upon the issue as to

XCII. CAL.—14

whether or not such reservation had been made; and it is not sufficient to incorporate into the findings evidence upon that subject which would support a finding that such reservation had been made, there being no finding of the ultimate fact, or of probative facts from which the ultimate fact would necessarily result.

ID. — RESERVATION FOR PUBLIC PURPOSES — ADVERSE POSSESSION — STATUTE OF LIMITATIONS. — A school-house site reserved by the city for its use, under the Van Ness ordinance, was reserved for public purposes and is public property, to which no title can be acquired by adverse possession; and the right of action to recover possession of the same for school purposes is not subject to the statute of limitations.

ID. — EJECTMENT — POWERS OF BOARD OF EDUCATION — JUDGMENT AGAINST CITY AND COUNTY — RES ADJUDICATA. — After the transfer by the legislature to the board of education of sole power to sue for all lots, lands, and property belonging to or claimed by the school department, the city or county, or its attorney in her behalf, had no authority to submit to any court the determination of the rights of the board of education to a school-house site, and any judgment rendered against the city and county in favor of a possessor of such site is no bar to an action by the board of education to recover possession thereof.

APPEAL — JURISDICTION OF APPELLATE COURT — REVIEW OF EVIDENCE — FINDINGS. — The jurisdiction of the appellate court does not permit it, in any case of appeal, to determine whether the evidence, irrespective of the findings, is sufficient to support the judgment; and when the findings are merely of evidence, the appellate court cannot make findings of fact from that evidence, which it was incumbent upon the trial court to make.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*C. H. Parker*, and *Parker & Eells*, for Appellant.

*T. B. Bishop*, for Respondents.

HARRISON, J.— The plaintiff brought this action for the recovery from the defendants of a parcel of land in San Francisco, claimed by it to have been reserved as a school lot under the provisions of the Van Ness ordinance, and to belong to the school department of that city. The defendants, in their answer, in addition to denying the title of the plaintiff, alleged title in themselves, and pleaded as a special defense to the action the statute of limitations, and also pleaded a former judgment recovered by their predecessors against the city and county of San Francisco, as a bar to the plaintiff's

right of action.   The cause was tried by the court, and upon its findings of fact the court found as a conclusion of law that the plaintiff's right of action was barred by the statute of limitations, and ordered judgment in favor of the defendants.   From the judgment entered thereon the plaintiff has appealed upon the judgment roll alone.

The land in question is a portion of the pueblo lands which were confirmed to the city of San Francisco by the decree of the circuit court of the United States, May 18, 1865, and are within the charter line of 1851 of the city of San Francisco, being east of said charter line and west of Larkin and Johnston streets, and are a part of the lands relinquished to said city by the act of Congress of July 1, 1864.   The rights of the respective parties to the land are derived under the Van Ness ordinance.   By that ordinance, passed June 20, 1855, the city of San Francisco granted all its right and claim to the lands within its corporate limits as defined by the charter of 1851 "to the parties in the actual possession thereof, by themselves or tenants, on or before the first day of January, A. D. 1855, . . . . provided such possession has been continued up to the time of the introduction of this ordinance in the common council." By section 4 of said ordinance the city, however, as a consideration for said grant, " reserves to itself . . . . such lots and lands as may be selected and reserved for streets and other public purposes under the provisions of the next succeeding sections "; and in section 6 provided further that it should have "the right to select and set apart from the lands west of Larkin Street and southwest of Johnston Street as many lots not exceeding 137½ feet square each as the mayor and common council may by ordinance determine to be necessary for sites for school-houses, hospitals, fire-engine houses, and other public establishments necessary and proper for the use of the corporation."

The court finds that the predecessors and grantors of the defendants were in the actual possession of the land in question on and prior to January 1, 1855, and con-

tinued to remain in such possession up to and including the twentieth day of June, 1855, and that the defendants and their predecessors and grantors had ever since, and up to the commencement of this action, held and remained in the actual, open, and exclusive possession of said land, claiming to hold and own the same in their own right, and adversely to the plaintiff and the whole world. This finding is sufficient to sustain the judgment, if the land in question is not included within the lands which were reserved to the city under the provisions of the aforesaid ordinance. If the land was so reserved, it was not granted to the predecessors of the defendants by the ordinance, and they obtained no title thereto by virtue of any of its provisions.

"These lots so set apart or reserved by the corporation for its own uses did not pass under the Van Ness ordinance to a person who might have been in actual possession of the lots in 1855. To suppose that the city so intended would convict its officers of the inconsistency of declaring by its two boards that the lots should be reserved to the use of the schools, and then making by ordinance a gratuitous disposition of them in favor of third persons." (*Board of Education* v. *Fowler*, 19 Cal. 25.)

The court has made no finding upon the issue of title presented by the pleadings, but has included in its findings certain evidence which was introduced at the trial. Neither has it found the probative facts from which the ultimate fact of title can be determined. It has been stated in several cases in this court that when the findings of the court below contain such probative facts that the ultimate fact in issue necessarily results therefrom, this court will make the deduction of such ultimate fact; but that, unless such ultimate fact necessarily follows from the facts found, the findings are insufficient, and the judgment must be reversed for want of findings. It has never been held, however, or even stated, that findings of the court below which consist either in whole or in part of evidence presented at the trial, and do not purport to be probative facts involved in the issue, are a

sufficient compliance with the requirements of the code.
The jurisdiction of this court is appellate, and not
original, and it is the function of a court of original
jurisdiction to determine in the first instance whether
the evidence offered in support of an issue is sufficient
to sustain that issue.   This court cannot pass upon that
question until after the trial court has determined it, and
then only in a proceeding to set aside such determina-
tion.   When an appeal from a judgment is heard upon
the judgment roll alone, the only question to be consid-
ered is, whether the findings of fact sustain the judg-
ment.   Whether the evidence is sufficient to sustain the
findings cannot be considered upon such appeal, ex-
cept in the single instance when it is brought here upon
a bill of exceptions on an appeal taken within sixty days
after the rendition of the judgment.   In no case can this
court determine whether the evidence, irrespective of
findings, is sufficient to support the judgment; and when
the findings are merely of evidence, this court cannot
make the findings of fact from that evidence, which it
was incumbent upon the trial court to make.

The title of the plaintiff to the land in question de-
pended upon the fact that it had been reserved by the
city under the provisions of the ordinance aforesaid, and
the title of the defendants, as derived under the ordinance,
depended upon the fact that it had not been so reserved.
Whether or not there had been such reservation was
therefore an essential fact to be found by the court.   If
there had been no such reservation, the possession of the
land by the defendants was sufficient to defeat the claim
of the plaintiff; but if the land had been reserved for a
public use, such fact was a material finding, and would
overcome the effect of a finding of adverse possession to
such an extent as to prevent the defendants from avail-
ing themselves of the statute of limitations to defeat the
right of the plaintiff.   This issue was directly presented
to the court for decision.   Instead, however, of finding
whether the land in question had been reserved under
the ordinance, it incorporated into its findings evidence

upon that subject which would support a finding that such reservation had been made, but which, as we have shown, cannot be assumed by this court as equivalent to a finding by the trial court upon that issue. In its finding it has set out the various steps taken by the city for the purpose of making the reservation authorized under the ordinance; the appointment of commissioners therefor; their preparation of a map or plan of the city; its presentation to the common council, with their report accompanying it; the character of the map; the delineation thereon of certain spaces colored brown, corresponding in number with the numbers named in the report as selected for school lots; the size of the respective lots so colored; the effect of the testimony of the draughtsman in reference thereto; and many other circumstances connected with said map; but instead of making the inference from this evidence that thereby a reservation was or was not made by the city, — an inference which, as we have shown, was to be made by that court (*Carpentier* v. *Mendenhall,* 28 Cal. 487; 87 Am. Dec. 135), — it has only set out the evidence from which the inference should have been drawn. That such inference of fact should have been found by the trial court appears to have been felt by the respondents, inasmuch as in their brief they urge that the facts found are insufficient to show any reservation, whereas the insufficiency of evidence to justify a finding cannot be considered upon an appeal on the judgment roll, but only upon an attack on the finding, through a motion for a new trial.

That a finding upon this issue is material, to such an extent as to require a reversal of the judgment for failure to make it, is evident from the fact that if the court had found that the land in question had been reserved by the city, its conclusion of law that the plaintiff's right of action is barred by the statute of limitations would have been unauthorized. The reservations to be made under the provisions of the ordinance were for "public purposes," and the purpose for which the lots were re-

served was none the less "public" because it was to be
"for the use of the corporation." The corporation was
a public corporation, and had been established as an
appropriate means of subserving the needs of the people
in matters of government and social administration.
For purposes of convenience, the state is divided into
counties, which are clothed with certain functions of
local government, and invested with the management of
public property within their respective boundaries. For
the same reason, and with the same purpose, municipal
corporations have been established, and whether their
territories and jurisdiction are co-extensive with the
county within which they are organized, or are limited
to a portion thereof, the public functions which they
exercise, and the public property which they manage, is
not alone for that limited portion of the public which
may be within their boundaries, but is also for and in
behalf of the whole public by which such management
has been intrusted to them, although the exercise of such
functions and the use of such property may be chiefly
enjoyed by those who constitute the limited public within
such corporations. The fact that in matters not per-
taining to their governmental functions such corpora-
tions may have private property, as well as incur private
obligations, does not deprive them of this public charac-
teristic. In all matters relating to such government and
management, they are but agencies of the state, with an
authority limited to the territory designated in their or-
ganization. The property which is intrusted to their
management is not divested of its public character, nor
is it any the less subject to the control of the state, or to
the rules which are applicable to other property of the
state, because it is situated within the boundaries of
such corporation. The jails, court-houses, hospitals,
school-houses, engine-lots, of such corporation are as
much public property and to be governed by the same
rules and limitations as are the streets and highways
and public squares which such corporation may have
caused to be opened or set apart for public use. Their

public character is not taken away because they are subject to local regulations in their management and use. The proprietary interest in all such property belongs to the public, and whether the legal title to such property be in the municipality or any of its officers or departments, it is at all times held by it or them for the benefit of the whole public, and without any real proprietary interest therein. The legislature, unless restrained by constitutional limitations, can dissolve the corporation at any time, and upon such dissolution the whole of such property would revert to the state, and may be by it transferred to another similar corporation; or the legislature may, without dissolving the corporation, at any time transfer the management of such property to different bodies or commissions. A municipal corporation is, for all purposes of government, or the exercise of public duties, or the administration of public trusts, made by the state one of its instruments, or the local depository of certain limited and prescribed political powers, to be exercised for the public good in behalf of the state, and not merely for itself, or for its own inhabitants.

" The school department of the municipality is only a part of its government. A reservation of property for school purposes is not a disposition of it for the benefit of third persons, but a keeping of it for its own purposes. The resolution amounts only to a setting apart of property of the town for a particular town purpose, and in this respect is not different from a similar act, if such had been done, declaring that the Plaza should be reserved as a public garden, or a lot for a jail, or a house for the holding of courts." (*Board of Education* v. *Fowler*, 19 Cal. 24.)

The lands in question were originally held by the pueblo in trust for the public, and subject to the control of the Mexican government. After the cession of California to the United States, the management of this trust was subject, in the first place, to the control of the general government, and became vested in the state of California upon its establishment as a sovereign member of the

Union.   Upon the organization of the city of San Francisco, its boundaries embraced a portion of these lands, but their title continued to remain impressed with the same trust.   The property, as well as the trust upon which it was held, and the corporation to whose management it was intrusted, was municipal, and therefore subject, as all political institutions, trusts, and property, to the direction and control of the superior authority of the sovereign.   By the act of March 11, 1858, ratifying and confirming the Van Ness ordinance, it was declared by the state that the lands that had been reserved under that ordinance were reserved for public purposes, and this reservation was afterwards confirmed by Congress by the act of July 1, 1864.   These principles have so often been affirmed by the courts of this country that it is only necessary to refer to a few leading cases in which they may be found.   (*Hart* v. *Burnett,* 15 Cal. 530; *Payne* v. *Treadwell,* 16 Cal. 224; *San Francisco* v. *Cannavan,* 42 Cal. 541; *Townsend* v. *Greeley,* 5 Wall. 326; *San Francisco* v. *Leroy,* 138 U. S. 656.)

If the land was reserved by the city from the operation of the grant contained in the ordinance, it was reserved for public use, and the confirmation of the ordinance in 1858, as well as the grant by Congress in 1864, had the effect to affirm the reservations contained in the ordinance, and the lands so reserved could not thereafter have been divested by any adverse possession. Counsel for respondents urge that this rule is applicable only when the property is reserved for the entire public, like streets, squares, or highways, in which not only the people of the municipality, but those of the state at large, have an interest.   In our opinion, there is no reason for not applying the same rule to property which is dedicated or reserved to a public use, when the title is held by the municipality, as is applicable when it is held by the state.   The same principles which prevent an adverse possession from ripening into a title when the title to the property belongs to the public, and is held for public use, apply in the one case as in the other.   It

is immaterial where the title — that is, the record title — is held, whether by the state at large, or by a county, or by some municipal department or other official body. There can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations. This rule is universal in its application to all property set apart or reserved for public use, and the public use for which it is appropriated is immaterial. The same principles which govern in the adverse holding of a street, a public square, a quay, a wharf, a common, apply. to the adverse holding of a court-house, a jail, or a school-house. The public is not to lose its rights through the negligence of its agents, nor because it has not chosen to resist an encroachment by one of its own number, whose duty it was, as much as that of every other citizen, to protect the state in its rights. This question has been determined, and these principles have already been established, in this state in the case of *County of Yolo* v. *Barney,* 79 Cal. 375; 12 Am. St. Rep. 152.

Upon the issue relating to the former judgment which is set up in the answer as a bar to the action, the court did not find whether that judgment was a bar, but merely found the facts connected with the rendition of the judgment, and made the judgment roll in that action a part of its findings. The court finds that on the twenty-ninth day of August, A. D. 1862, one Edward W. Jones, who was then in the actual possession of a tract of land including the premises in controversy, commenced an action in the late Fourth district court against the city and county of San Francisco to quiet his title to said land, and that the defendant therein appeared and answered in said action by the city and county attorney, and thereafter said action was tried upon its merits, and a finding and decree entered therein in favor of the plaintiff, and against the said city and county. The court also finds that the plaintiff herein "derives and obtains" its title to and right of posses-

sion of the demanded premises under and through the city and county of San Francisco, the defendant in that action, and that the defendants herein "had, long before the commencement of this action," acquired and still hold all the right, title, and interest in said premises which said Jones had at the time of the commencement of that action and the entry of judgment therein. The court does not find, nor does it appear from the judgment roll, that any summons was ever issued in said action, or served upon the defendant therein. It appears therefrom, however, that on the 31st of July, 1863, the defendant therein, by its attorney, filed a general denial to the allegations of the complaint, upon a stipulation of the plaintiff's attorneys to the effect that said answer should be regarded as a specific denial of the said allegations (the complaint being verified), and that on the same day the case was tried by the court, and findings and a decree signed by the judge thereof were filed, wherein it is " ordered, adjudged, and decreed that the said plaintiff was, at the time of the commencement of this action, the owner in fee of the lands described in his said complaint, and that all claims of the said defendants to any right, title, estate, or interest in the said lands, or any part thereof, adverse to the said title of the said plaintiff, are wholly unfounded, illegal, and void, both at law and in equity."

By an act of the legislature passed April 27, 1863 (Stats. 1863, p. 601), which took effect immediately, the plaintiff herein was created, and its powers and duties defined. By section 2 of that act it is declared: —

"Sec. 2. The board of education shall have *sole* power . . . . 11. To sue for any and all lots, lands, and property belonging to or claimed by the said school department, and to prosecute and defend all actions at law or in equity necessary to recover and maintain the full enjoyment and possession of said lots, lands, and property."

By another act of the legislature, passed on the same day (Stats. 1863, p. 771), defining the powers of the attorney and counselor of said city and county, that

officer was authorized to " perform such duties as attorney and counselor, in and for the said city and county, as the board of supervisors of said city and county shall, from time to time, prescribe." The question presented here does not, however, so much involve the authority of the city and county attorney to appear in the action without any request therefor from the board of supervisors, as it does the effect of a judgment against the city and county after the state had conferred upon the plaintiff herein the sole power to defend all actions necessary to maintain the full enjoyment and possession of the land in question. The court does not find at what time or by what means the plaintiff herein " derives and obtains " its title to the premises in question from the defendant in that action, and its finding in this respect is somewhat at variance with its other findings, since, if the land had been reserved as public property, it was at all times thereafter subject to the control of the state, and its management having been merely transferred by the state from the city and county to the plaintiff herein, the plaintiff cannot properly be said to have derived any title whatever, but has merely assumed the management of property the title to which has at all times remained in the public. If the plaintiff, however, obtained and derived such title prior to the commencement of that action, or even prior to the time when the court obtained jurisdiction of the defendant therein, the judgment therein would not affect its title, or be a bar to the present action. If the land in question was one of the lots reserved for public use under the provisions of the Van Ness ordinance, the management and control thereof was at all times subject to the direction of the legislature, and it alone was authorized to determine whether such management and control, including the right to sue for and defend the same, should be intrusted to the city and county, or to the board of education, or to any other public body or officer. After having once given such management and control to the city and county, it had the same right to transfer it to the plain-

tiff herein that an individual has to remove his agent and clothe another with the same power. After such transfer of authority, the city and county, or its attorney in her behalf, had no authority to submit to any court the determination of the rights of the plaintiff herein to the ownership or right of possession of the land in question, and any judgment rendered against the city and county would have no effect upon the right of the plaintiff herein to assert its title or right of possession for the same land.

For the reasons contained in the foregoing opinion, the judgment is reversed.

GAROUTTE, J., and DE HAVEN, J., concurred.

Hearing in Bank denied.